UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

KEITH T FRIERSON,

Plaintiff,

v.

CAROLYN W COLVIN,

Defendant.

CASE NO. 14-cv-5342 JRC

ORDER ON PLAINTIFF'S COMPLAINT

This Court has jurisdiction pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and Local Magistrate Judge Rule MJR 13 (*see also* Notice of Initial Assignment to a U.S. Magistrate Judge and Consent Form, ECF No. 5; Consent to Proceed Before a United States Magistrate Judge, ECF No. 6). This matter has been fully briefed (*see* ECF Nos. 14, 15, 19).

After considering and reviewing the record, the Court concludes that the ALJ provided specific and legitimate rationale for failing to credit fully the opinions of examining doctor, Dr. Kathleen S. Mayers, Ph.D., noting that her opinion that plaintiff

"might have difficulty maintaining attention and concentration through a normal eight-hour workday" is based on plaintiff's self-report and is not consistent with the fact that plaintiff worked at substantial gainful activity levels following his 20-foot fall without added accommodation and that the record does not demonstrate any worsening of plaintiff's cognitive abilities since the fall. The ALJ provided germane reasons for not crediting fully lay opinions and also provided clear and convincing reasons for failing to credit fully plaintiff's allegations and testimony, such as his inconsistent statements.

Therefore, this matter is affirmed pursuant to sentence four of 42 U.S.C. § 405(g).

BACKGROUND

Plaintiff, KEITH T. FRIERSON, was born in 1968 and was 39 years old on the amended alleged date of disability onset of July 1, 2008 (*see* Tr. 12, 272-73, 274-81). Plaintiff has a GED (Tr. 45). Plaintiff has worked as a janitor, dishwasher, floor cleaner, temporary laborer and resident assistant in an assisted living facility (Tr. 331-42). His last employment was at a care facility, where he was terminated, rehired and terminated several times allegedly for making mistakes (Tr. 67-72).

According to the ALJ, plaintiff has at least the severe impairments of "cocaine abuse; glaucoma; blindness in right eye; organic brain syndrome; [and] status post left shoulder/clavicle injury (20 CFR 404.1520(c) and 416.920(c))" (Tr. 14).

At the time of the hearing, plaintiff was living in a townhouse with his wife, his two teenage children and twenty year-old stepson (Tr. 37-38, 42).

PROCEDURAL HISTORY

Plaintiff's applications for disability insurance ("DIB") benefits pursuant to 42 U.S.C. § 423 (Title II) and Supplemental Security Income ("SSI") benefits pursuant to 42 U.S.C. § 1382(a) (Title XVI) of the Social Security Act were denied initially and following reconsideration (*see* Tr. 141-52, 153-64, 169-83, 184-98). Plaintiff's requested hearing was held before Administrative Law Judge Michael Gilbert ("the ALJ") on November 6, 2012 (*see* Tr. 33-140). On January 25, 2013, the ALJ issued a written decision in which the ALJ concluded that plaintiff was not disabled pursuant to the Social Security Act (*see* Tr. 9-32).

In plaintiff's Opening Brief, plaintiff raises the following issues: (1) Is the credibility assessment of plaintiff by the ALJ based on an improper analysis; (2) Did the ALJ err by failing to adequately explain why he rejected the part of the consultative examination by Dr. Kathleen Mayers, Ph.D., that would have required a different outcome than desired by the ALJ; (3) Did the ALJ err by using an improper legal analysis and unsupported evidentiary reasons to reject the lay witness evidence; and (4) Does the job number testimony of the VE at step 5 fail to meet the statutory requirements (*see* ECF No. 15, pp. 1-2).

STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d

1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

## DISCUSSION

(1) **Is the credibility assessment of plaintiff by the ALJ based on an improper analysis?**

Although plaintiff contends that the ALJ erred when evaluating plaintiff's credibility, the ALJ noted proper reasons for his failure to credit fully plaintiff's allegations and testimony, including plaintiff's inconsistent statements (*see* ECF No. 14, pp. 11-13).

The ALJ's credibility determinations "must be supported by specific, cogent reasons." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (*citing Bunnell v. Sullivan*, 947 F.2d 341, 343, 346-47 (9th Cir. 1991) (*en banc*)). The ALJ may consider "ordinary techniques of credibility evaluation," including the claimant's reputation for truthfulness and inconsistencies in testimony regarding symptoms, and may also consider a claimant's daily activities, and "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (citations omitted).

If an ALJ rejects the testimony of a claimant once an underlying impairment has been established, the ALJ must support the rejection "by offering specific, clear and convincing reasons for doing so." *Smolen*, *supra*, at 1284 (*citing Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir.1993)); *see also Reddick*, *supra*, 157 F.3d at 722 (*citing Bunnell v. Sullivan*, *supra*, 947 F.2d at 343, 346-47). The Court notes that this "clear and

convincing" standard recently was reaffirmed by the Ninth Circuit. *See Garrison v. Colvin*, 759 F.3d 995, 1015 n.18 (9th Cir. 2014) ("The government's suggestion that we should apply a lesser standard than 'clear and convincing' lacks any support in precedent and must be rejected").

Plaintiff argues that the discrepancies in plaintiff's allegations and testimony "can be explained by the fact that [plaintiff] has poor memory and is of marginal intelligence" (*see* ECF No. 14, p. 12 (*citing* Tr. 561-66)). The ALJ's finding of inconsistent statements nevertheless provides clear and convincing rationale for the ALJ's failure to credit fully plaintiff's allegations and testimony regardless of the reasons as to why plaintiff provided statements inconsistent with his allegations of limitations.

The Court first concludes that the ALJ's finding that plaintiff made inconsistent statements is based on substantial evidence in the record as a whole. For example, on June 3, 2011, plaintiff indicated that he does "not cook" and that he does "not prepare [his] meals at all" (*see* Tr. 357). However, on March 12, 2011, less than three months prior to this allegation, plaintiff indicated that he "is able to cook, and he cooks on occasion" (*see* Tr. 466). Similarly, despite plaintiff's allegation in June, 2011 that he "cannot drive a car," in March, 2011 plaintiff indicated that he "drives the children to school . . . . and he sometimes picks up the children from school" (*see* Tr. 466). In addition, despite plaintiff's June, 2011 allegation that he does "no shopping, my wife does it all" (Tr. 358), he had reported in March, 2011 that he "can buy groceries and drive" (*see* Tr. 466). Despite the fact that plaintiff's alleged poor memory and marginal intelligence may not allow him to remember whether or not he can drive or cook, the

ALJ's finding that plaintiff's allegations are inconsistent is a clear and convincing reason for failing to credit fully plaintiff's allegations of limitations.

The Court also notes the ALJ's reliance on plaintiff's "inconsistent statements regarding his substance abuse" (*see* Tr. 21). At plaintiff's administrative hearing on November 6, 2012, plaintiff testified that he has not consumed any alcohol since 2008 nor used any street drugs since 2008 (*see* Tr. 78-79). At his hearing, plaintiff backtracked a bit on the marijuana use, testifying that he "took a toke here or there" (*see* Tr. 79). However, in contrast, plaintiff reported to Dr. Mayers in March, 2011 that he last used marijuana about three weeks prior, and that he uses it about once or twice a month (*see* Tr. 463), and reported to Dr. Beth Liu, M.D. on April 24, 2011, that he "drinks alcohol occasionally" (*see* Tr. 475). The ALJ's findings regarding inconsistent statements with respect to alcohol and marijuana use is supported by substantial evidence in the record as a whole.

The ALJ also found that plaintiff "alleged physical limitations [] inconsistent with the examination findings" (*see* Tr. 21). The ALJ noted that plaintiff appeared at the hearing with a cane although the record does not reflect a prescription or a recommendation for an ambulatory aid, and "Dr. Liu observed that the claimant had a normal gait without the use of an assistive device" (*see id.* (*citing* Tr. 475; *see also* Tr. 38-39)). The Court also notes that plaintiff reported to Dr. Liu on April 24, 2011 that "he is able to ambulate without using a device" (*see* Tr. 475). Similarly, the ALJ noted that although plaintiff "alleged restricted range of motion in his left shoulder during the hearing, Dr. Liu found a full range of motion" (*see* Tr. 21 (*citing* Tr. 476)).

The Court concludes that the ALJ's finding that plaintiff made inconsistent statements and alleged physical limitations inconsistent with the examination findings both are findings supported by substantial evidence in the record as a whole. For the reasons stated and based on the record as a whole, the Court also concludes that the ALJ provided clear and convincing reasons for failing to credit fully the allegations and testimony of limitations by plaintiff.

(2) **Did the ALJ err by failing to adequately explain why he rejected the part of the consultative examination by Dr. Kathlees S. Mayers, Ph.D., that would have required a different outcome than desired by the ALJ?**

The Court notes first that the ALJ gave great weight to much of the opinion from examining doctor, Dr. Mayers (*see* Tr. 23). However, plaintiff contends that the ALJ erred by failing to credit fully the global assessment of functioning ("GAF") by Dr. Mayers, as well as the opinion from Dr. Mayers that plaintiff "might have difficulty maintaining attention and concentration through a normal eight -hour workday" (*see* ECF No. 14, pp. 6-8; *see also* Tr. 467). Defendant argues that the ALJ's rationale is proper, and also argues that Dr. Mayers did not definitively opine that plaintiff would have the opined difficulty and did not provide an opinion regarding a concrete limitation that should have been included into the RFC (*see* ECF No. 15, pp. 7-12). For the reasons discussed below, the Court concludes that defendant's argument is persuasive.

When an opinion from an examining or treating doctor is contradicted by other medical opinions, the treating or examining doctor's opinion can be rejected "for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester v.*

*Chater*, 81 F.3d 821, 830-31 (9th Cir. 1996) (*citing Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).

Here, the ALJ provided multiple reasons for failing to credit fully the GAF assigned by Dr. Mayers as well as for his failure to credit fully Dr. Mayers' opinion that plaintiff "might have difficulty maintaining attention and concentration through a normal eight -hour workday" (*see* Tr. 23, 467). Regarding Dr. Mayers' assignment of a GAF score of 57, as noted by defendant, a "GAF score is 'a subjective determination based on the scale of 100 to 1 of "the clinician's judgment of the individual's overall level of functioning"'" (*see* ECF No. 15, p. 8 (*quoting Pisciotta v. Astrue*, 500 F.3d 1074, 1076 n.1 (10th Cir. 2007))). Although a GAF score is relevant and is reflective of a doctor's overall opinion regarding the state of functioning of a claimant, in Dr. Mayers' report, it is not clear if the GAF reflects plaintiff's decreased abilities as opined by Dr. Mayers related to his head injury, or if it reflects the other issues noted by Dr. Mayers, including "unemployment; financial issues; [and] conflict with spouse" (*see* Tr. 467). These are not findings that would have to be included into plaintiff's RFC. Therefore, based on the relevant record, the Court concludes that the ALJ did not err in giving only little weight to Dr. Mayers' GAF score of 57.

The other opinion by Dr. Mayers that the ALJ gave only little weight to was her opinion that plaintiff "might have difficulty maintaining attention and concentration through a normal eight-hour workday" (*see* Tr. 23, 467). The ALJ found that this opinion was "based upon the claimant's subjective complaints, and the claimant is not fully credible" (*see* Tr. 23). As already discussed, the Court has concluded that the ALJ's

finding regarding plaintiff's credibility is without harmful legal error, *see supra*, section 1. The Court also concludes that the ALJ's finding that this opinion by Dr. Mayers was based in part on plaintiff's subjective complaints is a finding based on substantial evidence in the record. Although Dr. Mayers explicitly relies on her mental status examination ("MSE") for her opinion that plaintiff "is capable of understanding, remembering and carrying out three-stage instructions," and for her opinion that plaintiff's "concentration was good for the three-stage directions, but poor for math tasks," it is unclear from the record the reason for her opinion that plaintiff "might have difficulty maintaining attention and concentration through a normal eight – hour workday" (*see* Tr. 467). Because Dr. Mayers indicated that the MSE results suggested that plaintiff's concentration was good other than for math tasks, the Court concludes that the ALJ's inference that Dr. Mayers relied in part on plaintiff's subjective complaints for the opinion regarding difficulty maintaining attention and concentration is based on substantial evidence in the record as a whole. *See Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982) (An ALJ may "draw inferences logically flowing from the evidence") (*citing Beane v. Richardson*, 457 F.2d 758 (9th Cir. 1972); *Wade v. Harris*, 509 F. Supp. 19, 20 (N.D. Cal. 1980)); *cf.* SSR 86-8, 1986 SSR LEXIS 15 at *22 (an ALJ may not speculate).

The ALJ also found that this opinion from Dr. Mayers "is inconsistent with the overall record, including the claimant's ability to work at substantial gainful activity levels following his 20-foot fall and without added accommodations" (*see* Tr. 23). The ALJ noted that the "record does not demonstrate any worsening of the claimant's

cognitive abilities since the 20-foot fall" (*see id*.). Although plaintiff argues that the record demonstrates "that there was not the usual employer-employee relationship between [plaintiff] and his boss when he worked at Bush Congregate care," there is no evidence that plaintiff received special accommodation at this workplace and plaintiff admits that although arguably not the normal employment situation, it "was certainly not a sheltered workshop" (*see* ECF No. 14, p. 7-8). In the Work Activity Questionnaire, this employer indicated that plaintiff completed all the usual duties required for his position; was able to complete all the job duties without special assistant; regularly reported for work as scheduled; and, completed his work in the same amount of time as employees in similar situations (*see* Tr. 283). This same Questionnaire indicates that plaintiff's productivity however, was 50% or less of other employees' productivity (*see* Tr. 284). Although the record indicates that plaintiff may have had a special relationship with this employer, the Court concludes that the ALJ's finding that plaintiff was capable of substantial gainful activities after his 20-foot fall without added accommodations and that the record does not demonstrate any worsening of plaintiff's cognitive abilities since the fall are findings based on substantial evidence in the record as a whole. These findings support the ALJ's indication that the rejected opinions from Dr. Mayers are "inconsistent with the overall record," and provide further support for the ALJ's rejection of these opinions (Tr. 23).

For the reasons stated and based on the record as a whole, the Court concludes that the ALJ did not commit harmful legal error when failing to credit fully the assignment of

a GAF of 57 by Dr. Mayers and the opinion from Dr. Mayers that plaintiff might have difficulty regarding attention and concentration maintenance for a full day.

(3) **Did the ALJ err by using an improper legal analysis and unsupported evidentiary reasons to reject the lay witness evidence?**

Plaintiff argues that the ALJ's rejection of lay witness evidence is based on an improper legal analysis and unsupported evidentiary reasons (*see* ECF No. 14, pp. 8-11). Defendant argues that the ALJ is not required to discuss every witness's testimony on an individualized basis, because if the ALJ provides germane rationale for rejecting the testimony by one witness, "the ALJ need only point to those reasons when rejecting similar testimony by different witness" (*see* ECF No. 15, pp. 13 (*citing Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012)) (other citation omitted)). As discussed below, and based on the record as a whole, the Court finds defendant's argument to be persuasive.

Pursuant to the relevant federal regulations, in addition to "acceptable medical sources," that is, sources "who can provide evidence to establish an impairment," 20 C.F.R. § 404.1513 (a), there are "other sources," such as friends and family members, who are defined as "other non-medical sources" and "other sources" such as nurse practitioners, therapists and chiropractors, who are considered other medical sources, *see* 20 C.F.R. § 404.1513 (d). *See also Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223-24 (9th Cir. 2010) (*citing* 20 C.F.R. § 404.1513(a), (d)); Social Security Ruling "SSR" 06-3p, 2006 SSR LEXIS 5 at *4-*5, 2006 WL 2329939. An ALJ may disregard opinion evidence provided by both types of "other sources," characterized by the Ninth Circuit as lay testimony, "if the ALJ 'gives reasons germane to each witness for doing so." *Turner*,

*supra*, 613 F.3d at 1224 (*quoting Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001)); *see also Van Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996).

Here, the ALJ included the following discussion in his written decision:

> I have considered the lay witness statements presented by Janaya Miles, Santicia Miles, Wendy Stokes, Zontice Balis, and April Frierson, including Mrs. Frierson's testimony at the hearing (internal citation to Exhibits 17E, 18E, 19E, 20E, 16E, and 4E). In considering evidence from 'non-medical sources' who have not seen the individual in a professional capacity in connection with his impairments, such as spouses, parents, friends, neighbors, it would be appropriate to consider such factors as the nature and extent of the relationship, whether the evidence is consistent with other evidence, and any other factors that tend to support or refute the evidence. I find that the lay witnesses' statements are inconsistent with the medical evidence of record, which does not support the claimant's allegations, and inconsistent with the claimant's reported level of activity throughout the record. These statements are inconsistent with the overall record, including evidence demonstrating that the claimant has excellent corrected vision, normal range of motion throughout, and the ability to drive and play video games (internal citation to Exhibits 13F/8; 3F/3; 9F/2; 1F/2). In fact the claimant's wife admitted that the claimant mows the lawn, indicating that his field of vision and cognitive abilities do not prevent him from performing work-like activity. (Internal citation to 19E (discussion of surgery and no driving)) but this is not supported in the medical evidence. Moreover surgery in a recent note is mentioned but only if non-compliance continues. Based upon the testimony of the claimant's spouse (who attends treatments) there was no earlier recommendation for surgery before the statements were submitted. Moreover, there are statements that the claimant's cognitive difficulty began with the fall, but the claimant worked dispensing medicines in a care facility well after the fall. (Internal citation to 5E/2). The spouse's statements about the claimant's drug history is rebutted by exhibit 1F and 24E. Because of this and because the statements are inconsistent with the other evidence, as discussed above, I find that they cannot be fully credited. Moreover many of the statements are simply limits and information that clearly came for (sic) the claimant and form the basis of his already rejected subjective complaints. When third-party statements reflect subjective complaints, they are not objective evidence. The subjective complaints have already been found not credible. Where the ALJ properly rejects the claimant's subjective complaints and the lay witnesses' testimony

> [is] similar to those complaints, the ALJ's decision to reject the testimony on the basis of the similarity is proper. (Internal citation to *Seamen v. Astrue*, 2010 WL 1980331 (W.D. Wash. 2010 (*citing see, Valentine v. Commissioner of Social Security Admin.*, 574 F.3d 685, 694 (9th Cir. 2009)).

(Tr. 22-23).

The "medical evidence of record" specified by the ALJ includes the ALJ's finding that plaintiff "has excellent corrected vision" and "normal range of motion" (*see* Tr. 22). The ALJ also found that the lay statements are inconsistent with plaintiff's reported level of activity, noting that plaintiff plays video games and that Mrs. April Frierson, plaintiff's wife, admitted that plaintiff mows the lawn (*see* Tr. 22; *see also* Tr. 98).

The ALJ also discusses other aspects of the specific testimony of Mrs. Frierson (*see* Tr. 22-23). For example, the ALJ notes her testimony regarding "no driving" and indicates that "this is not supported in the medical evidence" (*see* Tr. 22). Mrs. Frierson testified at the administrative hearing on November 6, 2012, that it had "been a couple of years" since plaintiff drove (*see* Tr. 99). However, on March 12, 2011, plaintiff indicated to Dr. Kathleen S. Mayers, Ph.D. that on a typical day he "drives the children to school . . . . and he sometimes picks up the children from school" (*see* Tr. 466). In addition, the ALJ found that the lay testimony of Mrs. Frierson with respect to plaintiff's "drug use history is rebutted by Exhibit 1F and 24E" (*see* Tr. 23). Mrs. Frierson testified that plaintiff did not currently use marijuana, although he smoked marijuana "a while ago," and indicated that his use was when she first "got with him" (*see* Tr. 106), which she testified was February 16, 2007 (*see* Tr. 94). However, as noted by the ALJ, plaintiff reported (in Exhibit 1F) to Dr. Mayers on May 12, 2011 that he "last used marijuana

about three weeks ago and he uses it about once or twice a month" (*see* Tr. 463). These findings provide germane rationale for failing to credit fully the lay statement from Mrs. Frierson.

Similarly, the ALJ rejected the lay statement from Wendy Stokes, provided on October 1, 2012 (*see* Tr. 405). Ms. Stokes indicated in her lay statement that plaintiff "over the last few years" had become unable to drive, and also indicated that plaintiff's wife "does all the cooking and cleaning" (*see* Tr. 405). The Court already has noted plaintiff's admission in March, 2011 that he regularly drove the children to school (*see* Tr. 466). In addition, in contrast to the indication from Ms. Stokes that plaintiff's wife does all the cooking and cleaning, plaintiff reported to Dr. Mayers that he "is able to cook, and he cooks on occasion [and that he] is able to clean" (*see* Tr. 466). Plaintiff reported to Dr. Mayers that he "cleans about 30 minutes a day on the average [and] is able to wash dishes and clean floors" (*see id.*). These inconsistencies constitute germane rationale for the ALJ's failure to credit fully the lay statement from Ms. Stokes.

The Court also notes that when failing to credit fully the lay statements, the ALJ indicated that "many of the statements are simply limits and information that clearly came [from] the claimant" (*see* Tr. 23). Because of the nature of the indications from Ms. Stokes and because these indications were inaccurate, the Court concludes that the ALJ's findings regarding that the indications from Ms. Stokes regarding plaintiff's limitations came from plaintiff is a logical inference based on the record.

The ALJ may "draw inferences logically flowing from the evidence." *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982) (*citing Beane v. Richardson*, 457 F.2d 758

(9th Cir. 1972); *Wade v. Harris*, 509 F. Supp. 19, 20 (N.D. Cal. 1980)). However, an ALJ may not speculate. *See* SSR 86-8, 1986 SSR LEXIS 15 at *22.

The ALJ also did not err when failing to credit fully the lay statements from Santicia Miles (*see* Tr. 401); Janaya Miles (*see* Tr. 397); and Zontice Baylis (*see* Tr. 409). All three of these lay statements indicate serious problems with vision. Santicia Miles indicated that plaintiff "had so many problems seeing" and that plaintiff's "worst fear is to go blind but it seems like that is what is happening" (*see* Tr. 401). Janaya Miles indicated that plaintiff is "afraid to lose his vision all the way . . . . And now they want to do surgery on the other eye or he will be blind" (*see* Tr. 397). Zontice Baylis indicated that plaintiff "can't see" (*see* Tr. 409). However, the ALJ's finding that these "lay witnesses' statements are inconsistent with the medical evidence of record" is a finding based on substantial evidence in the record as a whole.

As noted by the ALJ, plaintiff's vision in his left eye is correctable to 20/20 (*see* Tr. 543). Also, as noted by the ALJ, and undisputed by plaintiff, there is no evidence in the record of a recommendation for eye surgery other than a recent note indicating surgery would be recommended "only if non-compliance continues" (*see* Tr. 23; *see also* Tr. 469 (recommended "Treatment: none at present"); Tr. 516 (eye doctor recommended "drop compliance" and the need to keep the intraocular pressure low in his left eye [OS]); Tr. 543 ("although the very central vision has been preserved with excellent corrective vision; however, given his pattern of self-neglect, it would be quite possible that the vision in this eye may start to fade to the point of handicap"). Dr. Leonard B. Alenick, M.D. opined on March 22, 2011 that plaintiff's vision "without glasses is [no light

perception in the right eye] and 20/20 in the left eye [OS]" (*see* Tr. 469). Dr. Alenick indicated that plaintiff's "[p]lotted visual fields are 95% of normal OS [in the left eye]" (*see id.*). He concluded that "SSI rating for visual abilities is 95%" (*see id.*). Similarly, plaintiff was seen on June 23, 2011 at Pacific Cataract and Laser Institute (*see* Tr. 516). Dr. Kimberly J. Calnan-Holt, O.D., conducted an eye examination (*see id.*). She indicated that her plan included educating plaintiff regarding the examination findings; "[eye] drop compliance and the need for low IOP OS [intraocular pressure in the left eye]"; and, monitoring plaintiff, presumably for intraocular pressure (*see id.*). Because these three lay statements are inconsistent with the medical record, the ALJ's inference that these lay statements reflected "information that clearly came [from] the claimant" is a logical inference based on the record as a whole. *Sample, supra*, 694 F.2d at 642 (*citing Beane v. Richardson*, 457 F.2d 758 (9th Cir. 1972); *Wade v. Harris*, 509 F. Supp. 19, 20 (N.D. Cal. 1980)). As discussed already, *see supra*, section 1, the ALJ's failure to credit fully plaintiff's allegations and testimony is supported by clear and convincing reasons.

For the reasons stated and based on the record as a whole, the Court concludes that the provided germane rationale for his failure to credit fully all of the lay statements. The Court finds no harmful error in the evaluation of the lay statements.

**(4) Does the job number testimony of the VE at step 5 fail to meet the statutory requirements?**

Plaintiff complains because with respect to two of the three jobs identified at step five, the vocational expert ("VE") testified as to job numbers for groups of jobs instead of providing the number of jobs available for a discrete job and DOT number (*see* ECF No.

14, pp. 13-14). This is a persuasive argument regarding two of the three jobs identified at step five; however, as noted by defendant, the VE was able to provide specific national job numbers, *i.e.*, 367,779 jobs, "for a three-occupation grouping that included the DOT number for housekeeping cleaner" (*see* ECF No. 15, p. 15).

As noted by the Ninth Circuit, "the burden at step five shifts to the Secretary to show that, taking into account a claimant's age, education, and vocational background, [he] can perform any substantial gainful work in the national economy." *Pinto v. Massanari*, 249 F.3d 840, 844-45 (9th Cir. 2001) (*citing* 20 C.F.R. §§ 404.1520(f) and 416.920(f); *Moore v. Apfel*, 216 F.3d 864, 869 (9th Cir. 2000)).

Here, plaintiff's argument that the VE provided the number of jobs available for a group of jobs instead of for the particular job identified as one that an individual with plaintiff's RFC could perform is persuasive only as to two out of the three jobs identified by the VE and relied on by the ALJ at step five. As noted by defendant, the VE first testified that there were 367,779 jobs available nationally (6,700 in Washington) for the representative job of cleaner-housekeeper, DOT number 323.687-014 (*see* Tr. 131). Subsequently, when questioned by plaintiff's attorney, the VE indicated that these numbers actually represent the number of jobs available for three distinct jobs within the subgroup of the cleaner-housekeeper job (*see* Tr. 135). However, the VE also testified that in addition to an individual with plaintiff's RFC being able to perform the representative job of cleaner–housekeeper, such an individual also would be able to perform the other two jobs within this subgroup, ironer and laundry worker (*see* Tr. 137-39). Therefore it is clear that according to the testimony of the VE, one with plaintiff's

identified RFC would be able to perform the three jobs of cleaner–housekeeper, ironer, and laundry worker; and, that there is sufficient job numbers for these three jobs to meet the ALJ's burden at step five. For this reason, the Court finds no harmful error at step five.

CONCLUSION

Based on the stated reasons and the relevant record, the Court **ORDERS** that this matter be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g).

**JUDGMENT** should be for defendant and the case should be closed.

Dated this 19th day of November, 2014.

J. Richard Creatura
United States Magistrate Judge